<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD R. DOMKOS, JR., <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br> ACTING COMMISSIONER OF SOCIAL <br> SECURITY, <br><br> Defendant. | Civil Action No. 15-2660 (JLL) <br><br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Edward Domkos, Jr., ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Barbara Dunn denying Plaintiff's application for disability insurance benefits ("DIBs") and for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.l(f). The Court has reviewed the parties' submissions. For the following reasons, the Court affirms the ALJ's decision.

**I.    BACKGROUND**[1]

The Court writes for the parties who are familiar with the facts and procedural history of the case. The Court therefore specifically addresses in the discussion below only those facts relevant to the issues raised on appeal.

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 5.

1

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Additionally, under the Act, disability must be established by objective medical evidence. To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." 42 U.S.C. § 423(d)(5)(A). Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Factors to consider in determining how to weigh evidence from medical sources include: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503. The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 119 (3d Cir. 2000). But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to

weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

### III. THE FIVE STEP PROCESS AND THE ALJ'S DECISION

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." *Id.* § 423(d)(2)(A).

The Third Circuit has summarized "the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520" as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

> In <u>step three</u>, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> <u>Step four</u> requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the <u>final step</u>. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Jones*, 364 F.3d at 118-19 (formatting and emphasis added). "The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step." *Sykes*, 228 F.3d at 263 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). Neither party bears the burden of proof at step three. *Id.* at 263 n.2.

The ALJ engaged in the above five-step sequential evaluation and found: (Step 1) that Plaintiff "has not engaged in substantial gainful activity since April 20, 2011" (R. at 14); (Step 2) that Plaintiff "has the following severe impairments: adjustment disorder, major depressive disorder, lumbar disc disease, history of substance abuse, anxiety, degenerative disc disease and lumbar herniated nucleus pulpous" (*id.*); (Step 3) that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" (*id.*); (RFC) that Plaintiff has the RFC "to perform sedentary work . . . except the claimant can lift and carry up to ten pounds frequently, stand and walk for two hours and sit for six hours, with occasional crawling and climbing of ladders, ropes and scaffolds, frequent climbing

4

of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; with the avoidance of all temperature extremes; the ability to change position after an hour for one minute; performing simple routine work; no public contact; occasional co-worker contact; no hazards, such as dangerous machinery or heights; and he would be off task ten percent of the day" (*id.* at 16); (Step 4) that Plaintiff "is unable to perform any past relevant work" (*id.* at 20); and (Step 5) that, given Plaintiff's age (34), limited education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" (*id.*). At step five, the ALJ heard testimony of a vocational expert. (*Id.* at 21.) The vocational expert testified that Plaintiff "would be able to perform the requirements of representative [sedentary] occupations such as table worker . . .; scale operator . . .; [or] preparer . . . ." (*Id.*) For these reasons, the ALJ found Plaintiff not to be disabled. (*Id.*) Plaintiff challenges the ALJ's step three, RFC, and step five findings. (*See* Pl.'s Br. at 11, 18, 25.)

**IV.    DISCUSSION**

Prior to addressing Plaintiff's specific arguments, the Court notes that Plaintiff's brief fails to comply with Local Civil Rule 9.1. It contains no meaningful statement of the issues for review (*see* L. Civ. R. 9.1(e)(5)(A)), no statement of facts (separate from the procedural history) (*see id.* 9.1(e)(5)(B),(C)), and few citations to the Record to support factual statements (*see id.* at 9.1(e)(5)(C)). Although Plaintiff has provided inadequate support for his arguments and factual assertions, to avoid additional delay for re-briefing, and to not punish the Plaintiff for the errors of his counsel, the Court has addressed Plaintiff's arguments based on the ALJ's decision, citations provided by the Government, and its own research.

**A. Step Three**

Plaintiff argues that "[a]t the third step of the sequential evaluation the *Cotter Doctrine*, as explained by *Burnett*, . . . calls for the ALJ to compare the combined effect of all of plaintiff's impairments with one or more of the Commissioner's listings." (Pl.'s Br. at 11 (citing generally *Burnett v. Comm'r of Soc. Sec.*).) More specifically, Plaintiff attacks the ALJ's step three analysis for two reasons: (1) that the ALJ did not adequately compare Plaintiff's lumbar disc disease, degenerative disc disease, and lumbar herniated nucleus pulpous to Listing 1.04A, and (2) that the ALJ inadequately compared Plaintiff's mental impairments to the Listings. (*Id.* at 10, 14-18.)

Before addressing these specific arguments, the Court notes that, in *Jones*, the Third Circuit made clear that *Burnett* "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis," so long as the ALJ provides sufficient analysis "to permit meaningful review." 364 F.3d at 505; *see also Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008) ("[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements."); *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient.").

1. Musculoskeletal System Listings

Plaintiff argues that "the only mention of the musculoskeletal listings affecting three of plaintiff's severe impairments is repeated verbatim as follows: Although the claimant has impairments that are considered to severe, they are not attended, singly or in combination with specific clinical signs and diagnostic findings required to meet or equal the requirements set forth

in the listing of impairments under 1.00, 12.04 and 12.06." (Pl.'s Br. at 14 (quoting the ALJ decision, R. at 16).)  Plaintiff further argues that "[t]he mention of '1.00' meaning all seven broad categories of listings and over 20 individual listings is the only reference the decision makes in order to comply with the obligation of comparing the medical evidence with the requirements of the musculoskeletal listings . . . . We don't know which paragraph was used for comparison. We don't know what that paragraph requires." (*Id.*)  Plaintiff then asserts that "Paragraph 1.04A requires pain, limitation of motion, motor loss, sensory or reflex loss and positive straight leg raising," and that the ALJ's specific findings "mirror those requirements." (*Id.*)

Although Plaintiff faults the ALJ for not providing the language of the listings, Plaintiff also fails to provide the language of the listing.  Moreover, he does not point the Court to specific record evidence supporting his argument that Listing 1.04A was met; he only points to certain of the points highlighted by the ALJ.  He also does not offer analysis or case support for why Listing 1.04A was met in this case.  It is not enough to simply call foul and punt to this Court for research and analysis.[2]  *See Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x. 159, 162-63 (3d Cir. 2008) ("First and foremost, Garrett provides us with no citations to any record evidence demonstrating that her impairments are of Listing-level severity."); *Milano v. Comm'r of Soc. Sec.*, 152 F. App'x 166, 169 (3d Cir. 2005) ("Milano has not attempted to show that her impairments meet or equal any specific Listing, and merely concludes that she has 'severe medical conditions' that 'might' do so.  That is simply not enough.") (internal citation omitted).

---

[2] At the end of Plaintiff's 1.04A section, Plaintiff also argues: "Why doesn't plaintiff meet 1.05A? Where is the discussion of that listing? Where is the mention of that listing? How is the Court to apply judicial review?" (Pl.'s Br. at 16.)  Listing 1.05A relates to "Amputation (due to any cause). A. Both hands . . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1.  As there are no facts suggestion that this listing applies to Plaintiff, the Court assumes that this was more rhetorical argument related to 1.04A.

7

> Listing 1.04A provides:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1. "For a claimant to show his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Jones*, 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). The reason for this requirement is that "[t]he Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Zebley*, 493 U.S. at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)).

Although the ALJ did not provide an analysis of the musculoskeletal listing criteria in the step three section of the decision, she did provide a review of Plaintiff's medical records with respect to his musculoskeletal impairments in the RFC analysis. She noted that, in October 2011, while Plaintiff's "left leg range of motion was limited," "[t]here were no severe motor difficulties, balance problems or coordination difficulties," and "[h]e was not using any assistive devices to walk." (R. at 17.) She further noted that, in October 2012, an "[e]xamination showed straight leg raise [that] was positive at about sixty degrees on the left," but his "[g]ait was stable on heel, toe and tandem walk," and his "sensory examination was intact." (*Id.* at 18.) The ALJ also highlighted

8

that the doctor noted that, because of plaintiff's "prior use of opiates," he may "have reduced his baseline pain threshold in their absence and that he might be exaggerating his perception of his injury." (*Id.*) And, in June 2013, his treating physician noted that plaintiff "had continued pain," which "affected his ability to sit and stand for long periods." (*Id.*) Thus, although Plaintiff does have some positive findings during the relevant period, substantial evidence supports that he did not meet all the requirements of Listing 1.04A. *See, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, 263 F. App'x 199, 202-03 (3d. Cir. 2008) (no evidence of motor loss to satisfy Listing 1.04A).

    2. <u>Mental Impairment Listings</u>

With respect to the mental impairment listings, Plaintiff states:

> There is no mention of the A criteria of 12.04 and 12.06 and no mention of the medical evidence which may or may not satisfy either or both in combination. The C criteria is mentioned only to assure us that it doesn't apply. The "findings" in the B criteria amount to a series of recited "moderate restrictions" . . . which mock the process of fact-finding or taking the step three analysis seriously . . . .

(Pl.'s Br. at 16.) Instead of providing analysis and support for his position[3] that the listing requirements were met, Plaintiff poses questions to the Court regarding the ALJ's decision: "What is this supposed to mean? Is this a finding? Is it based on Plaintiff's word? If so, how does 'no social life' translate to 'moderate.'" (*Id.* at 17.)

Listing 12.04 "Affective Disorders" is triggered when "the requirements in both A and B are satisfied, *or* when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04 (emphasis added). Listing 12.06 "Anxiety Related Disorders" is triggered when "the requirements in both A and B are satisfied, *or* when the requirements in both A and C are satisfied." *Id.*, 12.06 (emphasis added). The "B" criteria for both listings is the same. At least two of the following must be present:

---

[3] Plaintiff provides one cherry-picked citation to his medical records in support of his argument. (*See* Pl.'s Br. at 17.)

9

>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Marked difficulties in maintaining concentration, persistence, or pace; or
>    4. Repeated episodes of decompensation, each of extended duration.

*Id.* The C criteria for Listing 12.04 requires a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

>    1. Repeated episodes of decompensation, each of extended duration; or
>    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*, 12.04(C). The C criteria for Listing 12.06 requires a "complete inability to function independently outside the area of one's home." *Id.*, 12.06(C).

With respect to daily living, social functioning, and concentration and pace, the ALJ found that Plaintiff had only moderate, not marked, limitations in daily living, social functioning, and in maintaining concentration, persistence, or pace. (R. at 15.) The ALJ found that Plaintiff's own reporting in a Function Report supported this finding. (*Id.* (citing *id.* at 236-243[4]).) The ALJ noted:

>    In his Function Report, the claimant reported that he would get up and drink coffee, go outside and smoke. Walk around and then take his daughters to school. He watches TV all day until he picks up the children. He walks and feeds the dog with the children's help. He has some difficulty with sitting and standing to use the toilet and with putting on shoes and socks. He does not do housework, but is able to drive.

---

[4] The ALJ cites to Exhibit 7F. Plaintiff's Function Report is Exhibit 7E.

10

(*Id.*) The ALJ found that, although Plaintiff had limitations, he "is at least capable of basic daily activities." (*Id.* at 19.) She further noted that "although symptoms [of depression and anxiety] are present, the consultative examiner gave [Plaintiff] a GAF of 75," and found that Plaintiff had "a good ability to understand, remember and carry out simple job instructions, and a fair to good ability to demonstrate reliability and behave in a socially acceptable manner." (*Id.* (citing *id.* at 317-20 (consultative psychology examination of Dr. David Gelber) and *id.* at 415-18 (medical assessment of Dr. Judith Gurfein)).) The ALJ also noted that the DDS reports were "consistent with that of the treating doctor" on this point. (*Id.* (citing *id.* at 90-103, 132-34).) The ALJ appropriately considered such opinions. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("State agent opinions merit significant consideration as well . . . '[b]ecause State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .'") (quoting SSR 96–6p) (alteration in original).

With respect to decompensation, the ALJ found that "the claimant has experienced no episodes of decompensation, which have been of extended duration." (*Id.*). Plaintiff has pointed to no records contrary to this finding, much less records sufficient to find that the ALJ's decision was not supported by substantial evidence. Thus, the ALJ found that neither the B or C criteria were met. Although Plaintiff challenges the ALJ's decision for failing to mention the A criteria (*see* Pl.'s Br. at 10, 16), Plaintiff ignores that such analysis is not required where—as here—the ALJ has found both the B and C criteria not to be met. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.04 requires A *and* B or C, 12.06 requires A *and* B or A *and* C). The Court thus finds that substantial evidence supports the ALJ's decision with respect to the mental impairment listings.

**B. RFC Finding**

Plaintiff attacks the ALJ's RFC finding in three ways: (1) generally, that there is inadequate explanation for the basis of the findings; (2) that inadequate weight was given to the opinions of treating physicians; and (3) that the ALJ failed to give sufficient weight to Plaintiff's subjective pain complaints. (*See* Pl.'s Br. at 18-25.)

    1. General Adequacy of the ALJ's Explanation

Plaintiff argues that the ALJ's RFC finding is not based on evidence, and that the ALJ fails to explain the basis for the limitations assigned. (*See id.* at 21-22.) The Court finds this general attack on the adequacy of the ALJ's RFC explanation to be without merit. The RFC is an administrative finding that the ALJ is solely responsible for determining, based on consideration of the record as a whole. *See* 20 C.F.R. § 404.1527(e). In making the RFC determination, the Third Circuit has made clear that an ALJ is not required "to adhere to any set format for explaining his [or her] analysis so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'" *Garrett*, 274 F. App'x at 162-63 (quoting *Jones*, 364 F.3d at 505). While the ALJ here did not explain her RFC finding in the manner suggested by Plaintiff, she provided detailed findings related to Plaintiff's limitations and she referenced the state examiner opinions and other medical evidence which are consistent with her RFC findings. (*See* R. at 16-20.) Plaintiff's attack is limited to making unsupported statements, cherry picking certain medical facts, and asking rhetorical questions. He does not provide an affirmative argument for how the ALJ's decision is not supported by substantial evidence.

    2. Weight Given to Treating Physician Opinions

The ALJ did not give "great weight" to Plaintiff's treating physicians. (*See id.* at 19.) Plaintiff argues that this was error. (*See* Pl.'s Br. at 21-22.) On June 17, 2011, Dr. Dov Rand opined:

12

> This patient [a former forklift operation, truck driver and construction laborer] should not do any type of labor work. He should not lift more than 25lbs. Due to the severity of his pain he cannot sit or stand for a long period of time. He should remain out of work until further notice.

(*See* R. at 312.) On June 12, 2013, Dr. Ralee Miller opined[5] (almost verbatim to Dr. Rand):

> At this time, my plan is to try neurontin for his pain and to refer him to the neurosurgeon to further explore his treatment options. He should not do any type of labor work or any work that involves lifting more than 25 pounds. He is also limited by his pain in that he should not sit or stand for prolonged periods of time. Currently he should remain out of work until further notice.

(*See id.* at 414.) The ALJ found these physicians' specific findings (*e.g.*, "unable to lift up to twenty-five pounds") inconsistent with the ultimate conclusion that Plaintiff was unable to do *any* work. (*See id.* at 19.) She further noted that the "unable to work" finding was inconsistent with other medical records, and noted that these physicians "failed to provide any treatment records to support their findings." (*Id.*)

First, with respect the ALJ's decision to not give great weight to the opinion that Plaintiff was unable to work, the ALJ was not required to give such an opinion significant weight. "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361 (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). With respect to opinions by medical sources that a claimant is disabled, the regulations provide:

> Opinions on some issues, such as the examples that follow, are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
>
> (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source

---

[5] Exhibit 12F is signed by Dr. Miller. The letterhead is that of Dr. Chandler and is referred to in the ALJ decision as Dr. Chandler.

13

> that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.
>
> (2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.
>
> (3) *We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section*.

20 C.F.R. 404.1527(d) (emphasis added).

Second, while an ALJ must consider the opinions of treating physicians, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity" where it is not well supported or there is contradictory evidence. *Chandler*, 667 F.3d at 361 (alteration in original) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)); 20 C.F.R. § 404.1527(c)(2); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."). Here, the ALJ found that the opinions of certain of Plaintiff's treating physicians were inconsistent with other medical evidence and were not supported by these physicians treating records. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Instead, the ALJ based her RFC finding on a review of the medical record as a whole and the opinions of DDS consultants. *See Chandler*, 667 F.3d at 361 (stating that a state agency physicians' opinions merit "significant

consideration"). The Court finds that the ALJ's decision to not give great weight to the treating physicians' opinions was not error in this case; substantial evidence in the Record supports her findings. *See Coleman v. Comm'r. of Soc. Sec. Admin.*, 494 Fed App'x 252, 254 (3d Cir. Sept. 5, 2012) ("Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.") (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

### 3. Plaintiff's Subjective Pain Complaints

Plaintiff argues that "[i]t has long been axiomatic in this Court that a claimant's subjective complaints of pain must be given **serious** consideration." (Pl.'s Br. at 23 (citing *Smith v. Califano*, 637 F.2d 968 (3d Cir. 1981)) (emphasis in original).) Plaintiff further argues that "[w]here subjective testimony as to pain is corroborated by competent medical evidence, it must be given great weight," "[t]here must be medical evidence to disprove a claimant's testimony regarding pain," and "[n]on-medical evidence cannot be used to refute a claimant's credibility." (*Id.* at 23-24) Plaintiff argues that, contrary to the ALJ's findings, "everyone agrees that plaintiff is in pain and that the pain has not resolved." (*Id.* at 25.)

An ALJ is not required to accept Plaintiff's testimony without question. The ALJ has discretion to evaluate Plaintiff's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the alleged symptoms. *Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony, regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). Here, the ALJ accepted Plaintiff's statements that he was in pain, but she concluded that his statements about the "intensity, persistence, and limiting effects of his symptoms were not entirely credible." (R. at 16.) As Defendant accurately summarized, the

15

> ALJ carefully reviewed and thoroughly discussed Plaintiff's testimony and record statements about his pain, and then discussed the objective medical evidence concerning his back degenerative disc disease. The ALJ recognized that Plaintiff's back impairment caused significant pain and limitations sufficient to preclude his return to his laborer work.

(Def.'s Br. at 19-20 (citing R. at 16-19).) Recognizing Plaintiff's limitations (including pain), the ALJ assigned Plaintiff an RFC at a much lower level as compared to his prior work experience—finding him capable only of sedentary work with various other limitations. (R. at 16.) The Court finds that the ALJ's credibility determination was reasonable and not contrary to the record taken as a whole.

### C. Step Five

Plaintiff attacks the ALJ's step five finding for three reasons: (1) that the hypotheticals given by the ALJ to the vocational expert did not account for all of Plaintiff's impairments; (2) that the ALJ failed to discuss the vocational expert's testimony regarding hypotheticals given by Plaintiff's counsel; and (3) that the hypothetical involving the amount of weight that Plaintiff could lift was not consistent with the RFC finding. (*See* Pl.'s Br. at 25-31.)

#### 1. Failure to Account for All of Plaintiff's Impairments

Plaintiff argues that "[a] hypothetical question to a vocational expert must reflect all of the claimant's impairments that are supported by the record." (*Id.* at 25-26 (citing *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004)). He further argues that

> [i]t cannot be ignored that here the ALJ's vague construction limiting the plaintiff to "simple routine" or "one-two-step tasks" or "low contact work" does not come close to adequately conveying "moderate difficulty in maintaining social functioning" or other "moderate difficulties" in concentration, persistence, keeping pace, keeping a schedule, etc. Here . . . the VE's answers to the ALJ's questions may surely have been different had the actual, specific limitations, uncontradicted in the record, been conveyed verbatim as part of the ALJ's hypothetical.

(*Id.* at 28.)

16

Here, the ALJ asked the following questions of the vocational expert.

Q	Okay. For the first hypo, please assume that claimant could occasionally lift 20 pounds, frequently 10 pounds, stand or walk two hours a day, sit six hours a day, pushing and pulling are limited to those restrictions and those frequencies, that he can climb ramps and stairs frequently, ladders, ropes, and scaffolds occasionally, balance frequently, stoop frequently, kneel frequently, crouch frequently, occasionally crawl, that he should avoid temperature extremes, has the ability to change position for one minute after each hour, so we'll say a stretch break of one minute after each hour rather, that he can do simple, routine work, that he should have no public contact and occasional coworker contact, that he should avoid hazards such as dangerous machinery and heights. And if those are the restrictions, could claimant do his past relevant work?
A	No, Your Honor.
Q	Could a person with claimant's age, experience, and educational level do other work in the national and regional economies with those restrictions?
A	Yes, Your Honor.

(R. at 52-53.) The ALJ found that Plaintiff has the RFC

> to perform sedentary work . . . except the claimant can lift and carry up to ten pounds frequently, stand and walk for two hours and sit for six hours, with occasional crawling and climbing of ladders, ropes and scaffolds, frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; with the avoidance of all temperature extremes; the ability to change position after an hour for one minute; performing simple routine work; no public contact; occasional co-worker contact; no hazards, such as dangerous machinery or heights; and he would be off task ten percent of the day.

(*Id.* at 16.) Contrary to Plaintiff's characterization, the ALJ's hypothetical was almost verbatim to her RFC finding. Additionally, the Court agrees with Defendant that "a hypothetical question limiting the claimant to simple, routine tasks adequately accounts for moderate limitations in concentration, persistence, or pace." (Def.'s Br. at 25 (citing *McDonald v. Comm'r of Soc. Sec.*, 293 F. App'x 941, 946 (3d Cir. 2008); *Menkes v. Astrue*, 262 F. App'x 410, 412-13 (3d Cir. 2008); *Torres v. Barnhart*, 139 F. App'x 411, 416-17 (3d Cir. 2005).) In *McDonald*, the Court held:

> [I]n line with her finding that McDonald only had "moderate limitations with his ability to maintain concentration, persistence and pace," the ALJ included in her hypothetical that the individual be limited to "simple, routine tasks" and that he avoid noise extremes and bright or sudden light changes. Because the hypothetical

17

> was adequate, the vocational expert's testimony regarding other work provided substantial evidence for the ALJ's conclusion.

293 F. App'x at 946-47; *see also Menkes*, 262 F. App'x at 412 ("[P]erforming a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."). The Court further held that—like here (where the ALJ found that, "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties")—the case was

> distinguishable from *Ramirez*, where we held that a hypothetical requiring that the individual's work be limited to "simple one to two step tasks" was inadequate because it did not take into account that the claimant "*often* suffered from deficiencies in concentration, persistence, or pace."

*McDonald*, 293 F. App'x at 946 n.10 (citing 372 F.3d at 554) (emphasis in original).

An ALJ's hypothetical question need not include "every impairment *alleged* by a claimant," but only those that are "medically established." *Rutherford v. Barnhart,* 399 F.3d 546, 554 (3d. Cir. 2005) (emphasis in original). To the extent that Plaintiff's attack on the hypothetical is that all his alleged impairments were not addressed, he in essence is making another attack on the RFC finding itself (*see id.* at 554 n.8), which the Court has already rejected. Therefore, the Court finds that the ALJ's hypothetical adequately captured all of Plaintiff's medically established impairments.

    2. <u>Hypotheticals Posed by Plaintiff's Counsel</u>

Plaintiff next argues that "significant questions by counsel and the answers of the VE are absent from the decisional discussion of the vocational testimony." (Pl.'s Br. at 30.) As noted above, the ALJ is required to include all of the medically established impairments in the hypothetical, not all of Plaintiff's asserted impairments. To the extent that Plaintiff's counsel asks alternative hypotheticals based on impairments or limitations not found by the ALJ to be medically supported, the ALJ is not required to discuss such testimony as it is based on parameters found not to be applicable by the ALJ.

18

### 3. Hypothetical Regarding Ability to Lift Inconsistent with the RFC

Finally, Plaintiff argues that the ALJ's step five analysis was flawed as the ALJ's RFC finding is that Plaintiff can "'lift and carry up to 10 pounds frequently' but the VE is told that plaintiff can additionally lift and carry 20 pounds occasionally." (*Id.* at 29-30 (internal citations omitted).) Plaintiff thus argues that "the VE answered questions based upon capabilities not found within plaintiff's abilities in the decision." (*Id.*)

Defendant argues that "the inclusion in the hypothetical to occasionally lift twenty pounds does not defeat the step five finding because the VE identified sedentary jobs that required lifting no more than ten pounds, and, thus, comports with the RFC finding," and thus "[t]here exists no reasonable possibility that remand to obtain supplemental vocational expert testimony related to a hypothetical question that excludes occasionally lifting twenty pounds would lead to a different result here." (Def.'s Br. at 23.)   The Court agrees. *See also Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) ("Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm.").[6]

Plaintiff has not argued (or supported) that the jobs identified by the VE could not be performed if that portion of the hypothetical referring to occasionally lifting 20 pounds were removed.  Therefore, the Court finds that the conclusion of the VE that Plaintiff could perform certain sedentary work was consistent with the ALJ's RFC finding and medical record as a whole, and further, that, even if that portion of the hypothetical was deemed to be error, such error was harmless.

---

[6] The Court also notes that Plaintiff's treating physicians opined that Plaintiff "should not do any type of labor work or any work that involves lifting more than 25 pounds." (R. at 414.)

## V. CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's decision. An appropriate Order follows this Opinion.

DATED: May 2, 2016

                                              /s/ Jose L. Linares  
                                              JOSE L. LINARES  
                                              U.S. DISTRICT JUDGE